ORIGINAL

RECEIPT NUMBER

514136

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

29 PGS
Attach 1

RICHARD and LYNN PIDCOCK,

      Plaintiffs,

v

GEORGE EWING, INC.,
MONACO COACH CORPORATION,
CUMMINS ENGINE COMPANY, INC.,
ONAN CORPORATION, RVA COMPANY,
APA ENGINEERED SOLUTIONS, INC.,
KWIKEE PRODUCTS COMPANY, INC.,
DOMETIC CORPORATION, FREIGHTLINER CORP.,
ROAD MASTER CHASSIS and BANK ONE,
Jointly and Severally,

      Defendants.

```
JUDGE : Cohn, Avern
DECK  : S. Division Civil Deck
DATE  : 09/23/2004 @ 14:11:40
CASE NUMBER : 2:04CV73710
REM RICHARD/LYNN PIDCOCK V
MONACO COACH CORP ET AL (DQH)
```

MAGISTRATE JUDGE R. STEVEN WHALEN

---

TERRY J. ADLER (P31578)
Attorney for Plaintiffs
10751 S. Saginaw Street, Suite F
Grand Blanc, Michigan 48439
(810) 695-0100 (fax) 6950103

MICHAEL D. DOLENGA (P48794)
JEFFREY R. NOWICKI (P58880)
Attorneys for Monaco & George Ewing
30850 Telegraph, Suite 250
Bingham Farms, Michigan 48025
(248) 988-9922; (fax) 988-9933

ROBERT L. SWARTWOOD (P59493)
Co-Counsel for Plaintiffs
108 Mill Street
Clio, Michigan 48420
(810) 686-0270; (fax) 686-2440

---

## NOTICE OF REMOVAL TO FEDERAL COURT

Defendants, George Ewing, Inc., ("Ewing") and Monaco Coach Corporation, ("Monaco"), by their attorneys, Dolenga & Dolenga, PLLC, give notice that, pursuant to 28 U.S.C. §§ 1441 and 1446, the above action is removed from the Circuit Court for the County of Genesee, State of Michigan, in which court this cause of action was pending, to the United States District Court for the Eastern District of Michigan.  In support of this removal, Defendants Ewing and Monaco state as follows:

1.      Plaintiffs filed pleadings in the Circuit Court for the County of Genesee, State of Michigan, entitled Richard and Lynn Pidcock v George Ewing, Inc., Monaco Coach Corporation, Cummins Engine Company, Inc., Onan Corporation, RVA Company, APA Engineered Solutions, Inc., Kwikee Products Company, Inc., Dometic Corporation, Freightliner Corp., Road Master Chassis and Bank One, Jointly and Severally, Case No.: 04-79672-CP. Copies of the Summons, Complaint and Demand for Jury are attached as **Exhibit 1**.

2.      Defendants Ewing and Monaco were served with those pleadings and this Notice is filed within 30 days of Defendants' receipt of these pleadings.

3.      The pleadings attached as **Exhibit 1** constitute all process, pleadings and orders received by Defendants Ewing and Monaco in this action.

4.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves a federal question, i.e., a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et. seq.

5.      A copy of this Notice will be filed with the Circuit Court for the County of Genesee, State of Michigan, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants Ewing and Monaco give notice of removal of this action from the Circuit Court for the County of Genesee, Michigan to the United States District Court for the Eastern District of Michigan.

DOLENGA & DOLENGA, PLLC

_____

MICHAEL D. DOLENGA (P48794)
JEFFREY R. NOWICKI (P58880)
Attorneys for Monaco and George Ewing
30850 Telegraph, Suite 250
Bingham Farms, Michigan 48025
(248) 988-9922; (fax) 988-9933

Dated: September 22, 2004

73770

04-73710

JS 44 11/99     **CIVIL COVER SHEET**  COUNTY IN WHICH THIS ACTION AROSE: Wayne

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I. (a) PLAINTIFFS**

Richard and Lynn Pidcock

**DEFENDANTS**

Monaco Coach Corporation, et. al.

AVERN COHN

(b) County of Residence of First Listed    Genesee

21049

County of Residence of First Listed

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(C) Attorney's (Firm Name, Address, and Telephone Number)

Terry J. Adler
10751 S. Saginaw Street, Suite F
Grand Blanc, Michigan 48439

Attorney (If Known)

MAGISTRATE JUDGE R. STEVEN WHALEN
Michael D. Dolenga
30850 Telegraph Road, Suite 250
Bingham Farms, Michigan 48025

**II. BASIS OF JURISDICTION** (Place an "X" In One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item 111)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT**    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE / PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury- Med. Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21: 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel And Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of Overpayment and Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 H IA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | FEDERAL TAX SUITS | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS-Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

**V. ORIGIN**    (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 (specify) Transferred from another district
- ☐ 6 Multi district Litigation
- ☐ 7 Judge from Magistrate Appeal to District

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Claim for Breach of Warranty under Magnuson-Moss Warranty Act, 15 U.S.C. sec. 2301, et. seq. and other related pendent state law claims.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

$ DEMAND    Rev.-Mtr. Home

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY:**    (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  9/22/04

SIGNATURE OF ATTORNEY OF RECORD

## PURSUANT TO LOCAL RULE 83.11

1.       Is this a case that has been previously dismissed?

      ☐ Yes
      ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.       Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

      ☐ Yes
      ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :



| STATE OF MICHIGAN | | SUMMONS AND COMPLAINT | CASE NO. | |
|---|---|---|---|---|
| 7th | JUDICIAL DISTRICT JUDICIAL CIRCUIT | | 04 79672 CP ARCHIE L. HAYMAN P-37516 | |

**Court Address**
900 S. Saginaw Street, Flint, Michigan  48502

Court telephone no.
810-257-3220

| Plaintiff name(s), address(es) and telephone no(s). | | Defendant name(s), address(es), and telephone no(s) |
|---|---|---|
| RICHARD PIDCOCK and LYNN PIDCOCK, | v | GEORGE EWING, INC., MONACO COACH CORPORATION, CUMMINS ENGINE COMPANY, INC., ONAN CORPORATION, RVA COMPANY, APW ENGINEERED SOLUTIONS, INC. KWIKEE PRODUCTS COMPANY, INC., DOMETIC CORPORATION, FREIGHTLINER CORP.,  ROAD MASTER CHASSIS and BANK ONE, jointly and severally, |
| **Plaintiff attorney, bar no., address, and telephone no.** TERRY J. ADLER, PLLC By: Terry J. Adler (P31578) 10751 S. Saginaw St, Suite F Grand Blanc, MI  48439 (810) 695-0100    (810) 695-0103 | | |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:

1. You are being sued.

2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).

3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief    demanded in the complaint.

| Issued AUG 2 5 2004 | This summons expires: NOV 2 4 2004 | Court clerk Dore Feleks |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

__X__ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the
Complaint.

__ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____.  The docket number and assigned judge are:

(Name of court)

| Docket no. | Judge | | Bar no. |
|---|---|---|---|
| | | | |

This action. __ remains  __ is no longer  pending.

| VENUE | |
|---|---|
| **Plaintiff(s) residence (include city, township, or village)** Genesee County, Michigan | **Defendant(s) residence (include city, township, or village)** Genesee County, Michigan |
| **Place where action arose or business conducted** Genesee County, Michigan | |

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

July 15, 2004
Date

Signature of attorney/plaintiff      Terry J. Adler (P31578)

**COMPLAINT IS STATED ON ATTACHED PAGES.  EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**

If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arrangements.

MC 01 (6/96) SUMMONS AND COMPLAINT

MCR 2.102(B)(11), MCR 2.104, MCR 2.107, MCR 2.113(C)(2)(a),(b)



**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE**

RICHARD PIDCOCK and
LYNN PIDCOCK,

       Plaintiffs,

-vs-

GEORGE EWING, INC., MONACO
COACH CORPORATION, CUMMINS
ENGINE COMPANY, INC., ONAN
CORPORATION, RVA COMPANY,
APW ENGINEERED SOLUTIONS, INC.
KWIKEE PRODUCTS COMPANY, INC.,
DOMETIC CORPORATION, FREIGHTLINER
CORP., ROAD MASTER CHASSIS and Bank One,
jointly and severally,

       Defendants.

CASE NO. 04 79672 CP

JUDGE

ARCHIE L. HAYMAN
P-37516

---

TERRY J. ADLER, PLLC
BY: Terry J. Adler (P31578)
Attorney for Plaintiffs
10751 S. Saginaw Street, Suite F
Grand Blanc, MI 48439
(810) 695-0100
(810) 695-0103 - facsimile

ROBERT L. SWARTWOOD, PLLC
BY: Robert L. Swartwood (P59493)
Co-Counsel for Plaintiffs
108 Mill Street
Clio, MI 48420
(810) 686-0270
(810) 686-2440 - facsimile

---

**COMPLAINT, RESERVATION OF RIGHTS**
**AND JURY DEMAND**

* * *

There is no other civil action arising out of the same
transaction or occurrence alleged in this complaint
pending in this Court nor has any such action been
previously filed and dismissed after having been
assigned to a judge

* * *

Page 1

NOW COME the Plaintiffs herein, LYNN and RICHARD PIDCOCK by and through their counsel, Terry J. Adler, PLLC and Robert L. Swartwood, PLLC, and complaining against the Defendants state as follows:

1.  On information and belief, at all relevant times, Defendant

2.  On or about June 8, 2002, Plaintiffs purchased a 2002 Holiday Rambler Ambassador Motor Home, Vehicle Identification Number 1RF120610221015487, (vehicle) from Defendant GEORGE EWING, INC. Said vehicle being purchased for personal use by Plaintiffs.

3.  Delivery occurred on June 15, 2003.

4.  Commencing shortly after the purchase, Plaintiffs started a list or table of problems to be repaired and did return the vehicle for warranty repair of conditions which substantially impaired the value of the vehicle to Plaintiffs, to-wit:

    July 11, 2002 - The following list was submitted to Ewing's for warranty work:

    ► One screen on living room window was bent.
    ► One table cushion-back does not fit needs to be replaced.
    ► Right front seal around light-outside.
    ► Wood plug for table.
    ► Left rear storage door is loose.
    ► Gas cap - missing one.
    ► Trim on door in bedroom is loose - right hand side.
    ► Bedroom slider - open to outdoors.
    ► Paint chips - scratches.
    ► Seal around one side bedroom slider has a gap.
    ► Dash lights did not stay on.

5.  Defendant Ewing did not communicate with Plaintiffs from July 11th, 2002 forward until Plaintiffs called on July 19th, 2002, and were advised that warranty repairs could not be completed at the dealership and it would be necessary to take the motor home to the factory in Elkhart, Indiana.

6.  On August 26, 2002, Defendant Ewing took the motor home to Elkhart, Indian for the following defects and/or complaints:

    ► LP gas check
    ► A gap in the rear bedroom slide out
    ► Inoperative air conditioning system

Page 2

     ►   Inoperative dash panel gauges and gauge lights
     ►   The television was loose in its cabinet

7.    That Plaintiffs contacted Defendant Monaco on August 30, 2002, to inquire as to the status of the motor home repairs and were informed that they were completed and the vehicle was picked up by Defendant Ewing on that date.

8.    Notwithstanding the opportunity to repair the above problems, the dash panel lights were still inoperative.

9.    That as of September 5, 2002, Plaintiffs still had not had their motor home returned so they contacted Defendant Ewing and were told it would not be ready for pick up until September 7th, 2002.

10.    That Plaintiffs attempted to pick up the motor home on September 7th and were told that the driver returning the vehicle had problems with the brakes and that it was sent to Defendant Freightliner for repairs without Plaintiffs' knowledge or consent.

11.    That when Plaintiffs ultimately did receive their motor home back, they discovered that several warranty items were not repaired as promised. The following items were not taken care of:

     ►   The bent screen in the living room area had not been replaced or ordered.
     ►   The table cushion had not been replaced.
     ►   The seal around the right front headlight had not been replaced/repaired and was still loose and not fitting securely around the headlight.

12.    That as of September 14, 2002, Plaintiffs still had not received a new screen for the living room window as promised, so they contacted Defendant Ewing and were informed that Defendant Ewing failed to order it. The screen was then ordered and delivered on September 21, 2002.

13.    That between September 27th - 29th, 2002, Plaintiffs were finally able to use the motor home on their first trip. Constant problems with the motor home occurred resulting in a very unpleasant experience for the Plaintiffs and the following problems being discovered:

     ►   The hot water heater would not work on AC power, had never been plugged into a receptacle for power. On investigation they could see a plug on the floor of the space in the cupboard in the bedroom where it was located, but were unable to find a receptacle to plug the plug into. Ultimately they had to leave it on propane the entire trip.

- After reading the directions to fill the fresh water supply, the Plaintiffs followed the directions and heard a loud boom. When they went outside to see what was wrong they found water filling the bay where the hose was connected on the ground. The manual gave the wrong direction for the handle to open and close the valve for fresh water.
- The electric breaker seemed to have intermittent shorts as it would go on and off or show items lit which were not lit and were not being used at the time.
- The water faucet in the toilet area had a slop continuous drip.
- That was still a hole on the far side of the bedroom slider at the bottom through to the outside. They had to keep a rag stuffed into the space to keep out unwanted bugs, etc.
- The molding beside the sink on the right hand side was loose and falling down.
- The right heal-light molding was still loose and the rubber around the light was about to fall out.
- The boarder around the end window in the living room slider had come loose and needed to be re-attached to the wall. It looked as if the bolt holding it in place came loose from the wall.
- The refrigerator would not go to DC while they were on the road, just AC and propane.
- There was excessive play in the steering while driving.
- A red light would come on occasionally while driving on the levelers like there was a short in the system.
- One back cushion on the bench seat at the table is still falling down. The duct tape Ewing's put on the backs of both fo the cushions was more a hindrance than a help so we had to remove it.

14.   Due to the dissatisfaction with any warranty work done by either Defendant Monaco or Defendant Ewing to date, Plaintiffs took their warranty work to Defendant Cummins Michigan, Inc., in Saginaw, Michigan, on October 7, 2002, for the following repairs:

- Water faucet in bathroom has slow drip.
- Hot water heater does not work on electric.
- GFI breaker by the sink/shower does not work.
- Check steering for excessive play.
- Leveler jack light comes on while driving.
- Right side headlight loose.
- Slider edge by bed, left side, has bad gap when slider out.
- Border around couch window pulled away from wall.
- Refrigerator will not go to DC.
- Molding below sink on right side has gouge in it.

Page 4

- ► Back rear cushion falls out.
- ► Upper door on behind dinette table does not shut properly.
- ► Wall panel behind table sticks out, has staples hanging out.

15. That on November 22, 2002, Plaintiffs received a recall letter stating potential problems existed with the transmission in that the inner cooler might allow the mixture of coolant and transmission fluid. That after inspection by Defendant Cummins Michigan, Inc., it was determined that Plaintiffs' motor home did in fact have this problem and parts were ordered to repair the same.

16. That Defendant Cummins did in fact repair the problem but not until December 10, 2002.

17. That Plaintiffs picked up the motor home from Defendant Cummins on December 11, 2002, and were led to believe that the following things were done by Defendant Cummins:

- ► Check out and replace faucet assembly.
- ► Check water heater, was not plugged in. Find outlet, it works (set switch to off).
- ► Check outlet by sink. Set breaker by invertor and outlet works now.
- ► Check steering for play, inspect front end, was o.k. Road test. Play is normal. Wrote a separate work order to install a Saf-T-Plus.
- ► Check jack system, added fluid.
- ► Turn signal lens retaining tab broken, allowed assembly to be loose, replaced lense to correct.
- ► Adjust slide out so it contacts seals.
- ► Re-fasten windows border to the wall.
- ► Check refrigerator, is a 2-way...does not have the option to run on DC.
- ► Will need to be done at factory.
- ► Will need to be done at factory.
- ► Adjust door latch behind the dinette table.
- ► Remove staple, repair will have to be done at factory.
- ► Install oil cooler kit at rear of radiator.

18. That on January 24, 2003, while driving to Florida, the check engine light came on. The motor home was towed in and it was discovered that there was a faulty oil sensor modular and the engine was six quarts low.

19. The technician who worked on the motor home added the oil needed to bring it to the correct amount.

20. That after having the oil sensor repaired, Plaintiffs stopped for the night and

discovered that the generator which powered the furnace would not start.

21. That the next day, the motor home refused to start after several attempts for over 30 minutes.

22. That on March 12, 2003, the generator was checked by a technician in Tampa, Florida, and it started    , without any kind of repair.

23. On March 18, 2003, the generator again refused to start after several attempts.

24. That also on March 18, 2003, it was noticed that several gauges indicated various levels when in route, they were all empty.

25. That on April 2, 2003, the motor home was taken to another authorized dealer for repairs as follows:

    ➤ LP safety check
    ➤ Kitchen area roof vent leaks
    ➤ Closet bar was not put in the closet in the correct area and could not be utilized
    ➤ Monitor piece in hallway for lights, heater, power, the face plate keeps falling off
    ➤ Floor vent in bedroom it is cracked
    ➤ Stove was not level
    ➤ Electrical outlet by front heater did not accept plugs
    ➤ Dash lights did not work intermittently
    ➤ Antenna handle assembly came apart

26. That the above dealer was unable to make the following repairs:

    ➤ The closet which they said was not built correctly in the first place.
    ➤ The floor vent in the bedroom had to be ordered, they could not replace it.
    ➤ They said a problem with the stove is the top grill is bent and it should be replaced. It was not replaced.
    ➤ A faulty dimmer switch was replaced, but the gas gauge light still does not light up.
    ➤ In repairing the antenna handle to raise the antenna, the dealer broke the antenna so that it cannot be turned to tune in a station.

27. That on April 4, 2003, when Plaintiffs were driving the motor home on the highway in Alabama, the ABS light came on and a strong odor of burning rubber filled the motor home. It had to be towed in, but it took over 18 hours to coordinate. After being towed to the repair shop, Plaintiffs had to go to a hotel

and spent approximately one (1) week before the repair facility told them the vehicle still was not repaired and informed them that the brake system had basically burned up. It was also discovered at this time that there was excessive rust throughout the chassis of the vehicle. Plaintiffs left the motor home in Alabama and returned to Michigan via automobile.

28. The Dealer has had numerous opportunities to cure the problems identified and have failed to do so.

29. The Dealer did not cure the conditions which impaired the value of the vehicle within a reasonable time. In fact, the motor home was in for repairs a total of 249 days from July 11, 2002 through October 15, 2003.

30. Plaintiffs did revoke said vehicle because of non-conformities which substantially impaired the value of the vehicle to Plaintiffs and did give notice of said revocation.

31. That the non-conformities in the vehicle that existed at the time of revocation and the failure of the essential purposes of the warranty were not the fault of the Plaintiffs.

32. Plaintiffs did give notice of the revocation to Defendants Dealer.

33. The damages suffered by Plaintiffs, exceed the balance of the Installment Contract and Plaintiffs have set them off against the balance.

34. To the date of this complaint, Defendants and each of them have failed or refused to refund Plaintiffs money for said motor vehicle notwithstanding Plaintiffs' demands for same.

35. The actions of the Defendants as detailed more fully elsewhere herein, do violate the Plaintiffs' consumer rights as afforded by statute.

36. Plaintiffs seek both legal and equitable relief and is entitled thereto.

37. Plaintiffs seek damages in an amount greater than $25,000.00 and further seek declaratory and injunctive relief.

## COUNT I
### VIOLATION OF THE MOTOR VEHICLE SERVICE AND REPAIR ACT
### MCLA 275.1301 ET SEQ. AND RELATED CODE

38. The Plaintiffs incorporate herein by reference each and every allegation contained

Page 7

in the above paragraphs as though here fully reinstated and realleged.

39. Dealer is a "motor vehicle repair facility" as defined in the act and code, and is therefore, subject to same.

40. Plaintiff is a "person" and "customer" under the act and code.

41. Dealer did commit unfair and deceptive practices under the act and code in connection with its transactions with Plaintiff and the subject vehicle among which are, by way of example and not limitation:

    a. Failing to properly repair the vehicle;

    b. Promise to promptly repair the vehicle when the Dealer knew or should have known that repairs would not be provided promptly;

    c. Failing to honor a warranty;

    d. Failing to provide proper documentation when the vehicle is tendered for service or when the vehicle is returned to the customer;

    e. Failing to return old parts from a repair or to allow the customer to examine the old parts if the parts must be returned because of a warranty requirement;

    f. Charging for repairs not done;

    g. Failing to perform repairs within the time agreed;

42. As a direct and proximate result of the violation of the act and code by Defendant Dealer, Plaintiffs have suffered damages as aforesaid.

WHEREFORE, Plaintiffs pray for a judgment canceling and rescinding the installment contract, and for return of Plaintiffs' down payment and for incidental, consequential, exemplary and actual damages including costs and attorney fees, to be determined by the trier of fact. Plaintiffs also request this Court to enter a preliminary injunction allowing the Plaintiffs to cease making payments on the contract and grant further equitable relief as this Court would deem proper under the circumstances. Further, Plaintiffs pray for a judgment against the Defendants in an amount to be determined by the trier of fact exceeding Twenty-five Thousand ($25,000.00) Dollars and granting to Plaintiffs a return of all monies paid on the vehicle and for all damages including consequential and exemplary damages, together with costs, and actual and reasonable attorney fees as provided for by the statute and for such other legal and equitable relief as the

Page 8

Court may deem proper. Further, Plaintiffs pray that this Court enjoin the Dealer and Manufacturer from further violations of the Acts and for a declaratory judgment as to violations of the Acts and for actual damages including consequential and exemplary damages, reasonable attorney fees as provided by statute together with the costs of this suit and whatever other legal and equitable relief as the Court may deem proper.

**COUNT II.**

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(MCLA 445.901 et seq.; MSA 19.418(1) et seq.)**

43.   The Plaintiffs incorporate herein by reference each and every allegation contained in the above paragraphs as though here fully restated and realleged.

44.   That the Plaintiff is a "person" within the meanings of MCLA 445.902(b); MSA 19.418(2)(b).

45.   That the Defendant Dealer is a "person" within the meanings of MCLA 445.902(b); MSA 19.418(2)(b).

46.   That the Defendant Manufacturer is a "person" within the meanings of MCLA 445.902(b); MSA 19.418(2)(b).

47.   The Michigan Consumer Protection Act defines certain unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful and are defined as follows:

    (a)   Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

    (b)   Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

    (c)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he does not have.

    (d)   Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

    (c)   Representing that goods or services are of a particular

standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(f)   Disparaging the goods, services, business, or reputation of another by false or misleading representation of fact.

(g)   Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented.

(h)   Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity in immediate conjunction with the advertised goods or services.

(i)   Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions.

(j)   Representing that a part, replacement, or repair service is needed when it is not.

(k)   Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

(l)   Misrepresenting that because of some defect in a consumer's home the health, safety, or lives of the consumer or his family are in danger if the product or services are not purchased, when in fact the defect does not exist or the product or services would not remove the danger.

(m)   Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

(n)   Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

Page 10

(o)  Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

(p)  Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

(q)  Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.

(r)  Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

(s)  Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

(t)  Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

(u)  Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it any deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

(v)  Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has

Page 11

reason to know that the statement is not true.

(w)   Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

(x)   Taking advantage of the consumer's inability reasonably to protect his interests by reason of disability, illiteracy, or inability to understand the language of an agreement presented by the other party to the transaction who knows or reasonably should know of the consumer's inability.

(y)   Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

(z)   Charging the consumer a price which is grossly in excess of the price at which similar property or services are sold.

(aa)   Causing coercion and duress as the result of the time and nature of a sales presentation.

(bb)   Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc)   Failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

(dd)   Subject to subdivision (ee), representations by the manufacturer of a product or package that the product or package is one or more of the following:

   (i)   Except as provided in subparagraph (ii), recycled, recyclable, degradable, or is of certain recycled content, in violation of guides for the use of environmental marketing claims published by the federal trade commission, 57 FRP 36363 (August 13, 1992)

Page 12

    (ii)    For container holding devices regulated pursuant to Act No. 145 of the Public Acts of 1988, being sections 445.581 to 445.584 of the Michigan Compiled Laws representation by a manufacturer that the container holding device is degradable contrary to the definition provided in that act.

  (ee)    Representing that a product or package is degradable, biodegradable, or photodegradable unless it can be substantiated by evidence that the product or package will completely decompose into elements found in nature within a reasonably short period of time after consumers use the product and dispose of the product or the package in a landfill or composting facility, as appropriate.

  (ff)    Offering a consumer a prize if in order to claim the prize the consumer is required to submit to a sales presentation, unless a written disclosure is given to the consumer at the time the consumer is notified of the prize and the written disclosure meets all of the following requirements:

    (i)    Is written or printed in a bold type that is not smaller than 10-point.

    (ii)    Fully describes the prize, including its cash value, won by the consumer.

    (iii)    Contains all the terms and conditions for claiming the prize, including a statement that the consumer is required to submit to a sale presentation.

    (iv)    Fully describes the product, real estate, investment, service, membership, or other item that is or will be offered for sale, including the price of the least expensive item and the most expensive item.

48.    Contrary to the prohibition set forth in the statute, the Defendants and each of them has engaged in unlawful, unfair, unconscionable, or deceptive methods, act,

Page 13

or practices as set forth above, and have violated the afore stated Michigan Consumer Act as set forth elsewhere in this complaint.

49.   The Defendants have violated no fewer than the following sections of the MCPA, to-wit, (c), (n), (q), (r), (u), (y), (bb), (cc).

50.   That the Plaintiffs have suffered losses and damages as a result of the aforesaid violations of the Consumer Protection Act.

**WHEREFORE,** Plaintiffs pray for a judgment canceling and rescinding the installment contract, and for return of Plaintiffs' down payment and for incidental, consequential, exemplary and actual damages including costs and attorney fees, to be determined by the trier of fact. Plaintiffs also request this Court to enter a preliminary injunction allowing the Plaintiffs to cease making payments on the contract and grant further equitable relief as this Court would deem proper under the circumstances. Further, Plaintiffs pray for a judgment against the Defendants in an amount to be determined by the trier of fact exceeding Twenty-five Thousand ($25,000.00) Dollars and granting to Plaintiffs a return of all monies paid on the vehicle and for all damages including consequential and exemplary damages, together with costs, and actual and reasonable attorney fees as provided for by the statute and for such other legal and equitable relief as the Court may deem proper. Further, Plaintiffs pray that this Court enjoin the Dealer and Manufacturer from further violations of the Acts and for a declaratory judgment as to violations of the Acts and for actual damages including consequential and exemplary damages, reasonable attorney fees as provided by statute together with the costs of this suit and whatever other legal and equitable relief as the Court may deem proper.

## COUNT III.
## BREACH OF WARRANTY

51.   The Plaintiffs incorporates herein by reference each and every allegation contained in the above paragraphs as though here fully restated and realleged.

### A.   MAGNUSON-MOSS WARRANTY ACT

52.   That the Plaintiffs are consumers as defined in the Magnuson-Moss Warranty Act (hereinafter referred to as the "Warranty Act") 14 USC 2301 (3).

53.   That the Defendant Dealer is a supplier and warrantor as defined by the Warranty Act, 15 USC 2301(4), (5).

54.   The Defendant Manufacturer is a supplier and warrantor as defined in the Warranty Act, 15 USC 2301(4), (5).

55.   The vehicle is a "Consumer Product" as defined in the Warranty Act, 15 USC

Page 14

2301(1).

56.   The vehicle was manufactured and sold after July 4, 1975.

57.   The express warranties pertaining to the vehicle are "written warranties" as
defined in the Warranty Act, 15 USC 2301(6).

58.   The above described actions (failure to properly repair, failure to promptly repair,
etc.) constitutes breaches of the written warranties by the Manufacturer and Dealer
and Financier.

59.   That the above described actions on the part of Dealer, Financier and
Manufacturer constitute breaches of the implied warranty of merchantability
actionable under the warranty act, 15 USC 2310(d)(1).

60.   Defendants and each of them have, in light of the breaches of written warranties
as set forth above, failed and refused to give Plaintiff the remedies to which
Plaintiff is entitled by statute.

### B.   BREACH OF U.C.C. EXPRESS AND IMPLIED WARRANTY

61.   The Plaintiffs are "buyers" under the Michigan Uniform Commercial Code,
MCLA 440.2103; MSA 19.2103.

62.   The Defendant Dealer is a "seller" and "merchant" under the Michigan Uniform
Commercial Code, MCLA 440.2103; MSA 19.2103.

63.   The Defendant Manufacturer is a "seller" and "merchant" under the Michigan
Uniform Commercial Code, MCLA 440.2103; MSA 19.2103.

64.   The vehicle in question constitutes "goods" under the Michigan Uniform
Commercial Code, MCLA 440.2105; MSA 19.2105.

65.   The Plaintiffs' purchase of the vehicle was accompanied by an express warranty
written and otherwise offered by Defendant Manufacturer and extending to
Plaintiffs, which warranty was part of the basis of the bargain of the contract
between Plaintiffs and Dealer for the sale of the vehicle.

66.   The Plaintiffs' purchase of the motor vehicle was accompanied by an express
warranty written and otherwise offered by Defendant Dealer and extending to
Plaintiffs.

67.   By taking an assignment of the contract for sale from the Defendant Dealer, the

Page 15

Defendant Financier did extend an express warranty written and otherwise which extended to the Plaintiffs and was a part of the basis of the bargain between Plaintiff and the financing agency.

68. That in the express warranties, the Defendant Manufacturer and Dealer warranted *inter alia*:

    a.    That the vehicle was free of all defects in materials or workmanship, and that if any defects were discovered within certain periods of time or the accumulation of certain mileage, the defects would be repaired free of charge to the Plaintiffs.

    b.    That when brought in for repairs that said vehicle would be repaired within certain time limits.

    c.    That repairs to the vehicle would be correctly done and satisfactory to the Plaintiffs.

    d.    That if the Plaintiffs purchasers had any defenses against the contract or goods, the Defendant Financier or any other holder of the consumer credit contract would be subject to those defenses.

69. In fact, when delivered, the vehicle had defects in materials or workmanship which were discovered during the warranty period, including but not limited to the items set forth above, and further, the warranties on the vehicle did fail of their essential purposes as set forth above. Further, the Plaintiff did give Defendant Financier notice of claims and defenses that were raised against the Defendant Dealer.

70. The Plaintiffs have notified the Defendant Dealer and Defendant Manufacturer of the aforesaid defects, failures, claims and defenses.

71. The Plaintiffs have provided to the Defendant Dealer and Defendant Manufacturer sufficient opportunity to repair the vehicle and upon failure of the repair did timely demand a refund or replacement.

72. That the Plaintiffs have reasonably met all of Plaintiffs' obligations and preconditions as provided in the express warranty.

73. That the Dealer and Manufacturer have failed to adequately repair the vehicle and/or have not repaired same in a timely fashion, and the vehicle, at the time of

revocation, was still in a defective condition, and the warranties have failed of their essential purposes.

74. That the express warranty limits remedies under the warranty to repair or replacement. The limitation operates to deprive Plaintiffs of the benefit of Plaintiffs' bargain and is therefore void and of no effect and/or the limitation is unconscionable as applied to Plaintiffs, under the facts of this case, the warranty having failed in its essential purpose and is therefore void and of no effect and/or by its actions as described alone the Dealer and Manufacturer have repudiated the warranty and may not rely on any limitation in the warranty.

75. That the vehicle continues to contain defects which substantially impair the value of the vehicle to Plaintiffs.

76. The vehicle is neither merchantable nor fit for its particular purpose.

77. These defects and failures of the essential purposes of the warranties could not reasonably have been discovered by the Plaintiffs prior to Plaintiffs' acceptance of the vehicle.

78. Upon discovery of the failure of the essential purposes of the warranty, Plaintiffs did revoke acceptance within a reasonable time.

79. The Plaintiffs have suffered damages, to wit, the entire value of the vehicle and other consequential and incidental damages as a result of the failure of the essential purposes of the warranties.

**WHEREFORE,** Plaintiffs pray for a judgment canceling and rescinding the installment contract, and for return of Plaintiffs' down payment and for incidental, consequential, exemplary and actual damages including costs and attorney fees, to be determined by the trier of fact. Plaintiffs also request this Court to enter a preliminary injunction allowing the Plaintiffs to cease making payments on the contract and grant further equitable relief as this Court would deem proper under the circumstances. Further, Plaintiffs pray for a judgment against the Defendants in an amount to be determined by the trier of fact exceeding Twenty-five Thousand ($25,000.00) Dollars and granting to Plaintiffs a return of all monies paid on the vehicle and for all damages including consequential and exemplary damages, together with costs, and actual and reasonable attorney fees as provided for by the statute and for such other legal and equitable relief as the Court may deem proper. Further, Plaintiffs pray that this Court enjoin the Dealer and Manufacturer from further violations of the Acts and for a declaratory judgment as to violations of the Acts and for actual damages including consequential and exemplary damages, reasonable attorney fees as provided by statute together with the costs of this suit and whatever other legal and equitable relief as the Court may deem proper.

## COUNT IV.
## BREACH OF WARRANTY OF GOOD FAITH AND FAIR DEALING

80. Plaintiffs hereby repeat and reallege the above paragraphs as if specifically set forth herein word for word.

81. Plaintiff entered into an agreement with the Defendants, whereby Plaintiffs purchased a certain vehicle as aforementioned.

82. Good faith is defined in Michigan's Uniform Commercial Code as honesty and fact in the conduct or transaction concerned, MCLA 440.1201, and in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealings in the trade, MCLA 440.2103 (1) (b).

83. There was implied in the agreement between the Plaintiffs and the Defendants for the purchase of the aforementioned vehicle a covenant of good faith and fair dealing between the parties Defendants, and the Plaintiffs wherein Defendants impliedly covenanted that they would deal with the Plaintiffs fairly and honestly and do nothing to impair, interfere with, hinder or potentially injure the rights of Plaintiffs with respect to the receipt of a vehicle free from manufacturing or workmanship defects, or with respect to the repair under warranty or otherwise of said vehicle.

84. The Defendants have breached their covenants of good faith and fair dealing by their actions as previously set forth herein, and in refusing to deal carefully, honestly and fairly with the Plaintiffs regarding the purchase, express and implied warranties covering the aforementioned vehicle.

85. The conduct of the Defendants as aforementioned is without just or reasonable cause, and the Defendants knew or now know that such conduct is contrary to the law and the terms and conditions of the contract for purchase of the aforementioned vehicle.

86. In breach of the covenant of good faith and fair dealing, the Defendants have acted willfully, fraudulently, maliciously, oppressively, with conscious disregard to the Plaintiffs' rights and with intent vex, annoy, harass and injure the Plaintiffs, and Plaintiffs are entitled to recover therefore exemplary damages against the Defendants.

WHEREFORE, Plaintiffs pray for a judgment canceling and rescinding the installment contract, and for return of Plaintiffs' down payment and for incidental, consequential, exemplary and actual damages including costs and attorney fees, to be determined by the trier of fact. Plaintiffs also request this Court to enter a preliminary injunction allowing the Plaintiffs to cease

Page 18

making payments on the contract and grant further equitable relief as this Court would deem proper under the circumstances.  Further, Plaintiffs pray for a judgment against the Defendants in an amount to be determined by the trier of fact exceeding Twenty-five Thousand ($25,000.00) Dollars and granting to Plaintiffs a return of all monies paid on the vehicle and for all damages including consequential and exemplary damages, together with costs, and actual and reasonable attorney fees as provided for by the statute and for such other legal and equitable relief as the Court may deem proper.  Further, Plaintiffs pray that this Court enjoin the Dealer and Manufacturer from further violations of the Acts and for a declaratory judgment as to violations of the Acts and for actual damages including consequential and exemplary damages, reasonable attorney fees as provided by statute together with the costs of this suit and whatever other legal and equitable relief as the Court may deem proper.

## COUNT V.
## REVOCATION

87.  The Plaintiff incorporates herein by reference each and every allegation contained in the above paragraphs as though here fully restated and realleged.

88.  Plaintiff is a buyer as defined by the Uniform Commercial Code, MCLA 440.1101 *et seq.* and particular 440.2103.

89.  Defendant dealer is a seller and merchant as defined in the Uniform Commercial Code, MCLA 440.1101 *et seq.*

90.  Defendant manufacturer is a merchant as defined in the Uniform Commercial Code, MCLA 440.1101 *et seq.*

91.  Defendant Financier is a person in the position of a seller as defined in the Uniform Commercial Code, MCLA 440.2707.

92.  The motor vehicle was purchased with written and other express warranties and implied warranties including by way of example and not by way of limitation, warranties against  defects in workmanship and materials from the Defendant Manufacturer and from Defendant Dealer; warranties regarding the ability of the defendants to correct any defects in workmanship and materials that were reported to defendants or defendants' agents; warranties regarding the defendants' ability to provide prompt, reliable service to plaintiff should he purchase the vehicle; warranties that the vehicle, when brought in for repair, would be repaired promptly; warranties that any holder of the retail installment contract would be subject to the claims and defenses that the consumer could bring against the seller of the consumer goods purchased under the contract or with the proceeds of the contract.

Page 19

93. Said warranties were represented to the Plaintiff by the defendants with the intent that the Plaintiff rely upon said warranties in purchasing the subject automobile.

94. Defendant Dealer and Defendant Manufacturer did provide warranties both express and implied to Plaintiff when the vehicle was purchased and repaired.

95. Plaintiff did reasonably rely upon said warranties and representations.

96. Notwithstanding the representations of the defendants regarding the warranties given, the vehicle was sold with defects in workmanship and material, which defects were not discovered by Plaintiff prior to purchase of the vehicle and which could not have been discovered by the Plaintiff prior to the purchase by Plaintiff. Further, there have been violations of the warranties relating to the ability of the defendants to repair the vehicle in a timely and prompt manor such that the warranties failed of their essential purposes.

97. The defects in the vehicle purchased by Plaintiff and the failures of the essential purposes of the warranties as described elsewhere in this complaint did substantially impair the value of the vehicle to the Plaintiff.

98. The failure of the warranties' essential purposes did substantially impair the value of the goods to the Plaintiffs.

99. Upon discovery of the defects and failures of the warranties which substantially impaired the value of the goods to the Plaintiff, Plaintiff did notify the Defendant Dealer and Defendant Manufacturer within a reasonable time and before a substantial change had occurred in the goods which was not caused by it's own defects, that Plaintiff revoked acceptance of the goods.

100. Notice of revocation was also given to Defendant Financier and further, Plaintiff has given or hereby does give notice of damages to the defendant Financier and plaintiff's intent to deduct all of the damages from the balance of the contract pursuant to MCLA 440.2711.

101. Plaintiff has demanded return of Plaintiff's money and all incidental and consequential damages due as a result of Defendants' actions justifying revocation.

102. As of the date of this complaint, the Defendants and each of them have failed or refused to return Plaintiff's money or replace Plaintiff's goods.

103. As a result of Defendants failures and refusals as set forth herein, Plaintiff has been damaged in that Plaintiff's paid for goods that Plaintiff revoked, paying

substantial sums in principle and interest, and further losing the benefit of the use of Plaintiff's money. Additionally, Plaintiff has had to retain legal counsel in an attempt to recover the funds which should have automatically been return to Plaintiff upon her revocation of the goods.

104. Continued demand by Defendant Financier for payment of the note by the Plaintiff imposes a hardship on Plaintiff and is inequitable, serving to chill Plaintiff's exercise of Plaintiff's rights.

WHEREFORE, Plaintiff prays for a judgment canceling the lease/installment sales contract, and for return of Plaintiff's down payment and for incidental, consequential, exemplary and actual damages including cost and attorney fees, to be determined by the trier of fact and any other relief the Court deems appropriate. Further, Plaintiff prays that this Court enter judgment against the Defendants and each of them on behalf of the Plaintiff granting to the Plaintiff those damages to which Plaintiff is deemed entitled by trier of fact including costs, interest and attorney fees, as provided by law. Plaintiff also requests this Court to enter a preliminary injunction allowing the Defendant to cease making payments on the contract and grant further equitable relief as this Court would deem proper under the circumstances. Further, Plaintiff prays for a judgment against the Defendants in an amount to be determined by the trier of fact exceeding Twenty-Five Thousand ($25,000.00) Dollars and granting to Plaintiff a return of all monies paid on the vehicle and for all damages including consequential and exemplary damages, together with costs, and actual and reasonable attorney fees as provided for by the statute and for such other legal and equitable relief as the Court may deem proper. Further, Plaintiff prays that this Court enjoin the Dealer and Defendant Manufacturer from further violations of the Acts and for a declaratory judgment as to violations of the Acts and for actual damages including consequential and exemplary damages, reasonable attorney fees as provided by statute together with the costs of this suit and whatever other legal and equitable relief as the Court may deem proper.

## RESERVATION OF RIGHTS

The Plaintiff herein reserves the right to amend this Complaint after discovery is completed and as additional facts become known.

Page 21

## JURY DEMAND

The Plaintiff demands trial by jury on all issues triable as such.

Dated: July 15, 2004

TERRY J. ADLER, PLLC
By: Terry J. Adler (P31578)
Attorney for Plaintiffs

PREPARED BY: TERRY J ADLER, PLLC, ATTORNEY AT LAW, 10751 S SAGINAW ST, STE F, GRAND BLANC, MI 48439-8169, 810-695-0100