UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD AND LYNN PIDCOCK,

    Plaintiffs,

v.                                              Case No. 04-73710

GEORGE EWING, et al,                  HONORABLE AVERN COHN

    Defendants.

_____/

**MEMORANDUM AND ORDER
GRANTING ROAD MASTER'S MOTION FOR SUMMARY JUDGMENT
AND
GRANTING CUMMINS AND ONAN'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

This is a breach of warranty case arising out of the purchase of a motor home. Plaintiffs Richard and Lynn Pidcock sued the following defendants: George Ewing, Inc. (Ewing); Monaco Coach Corporation (Monaco); Cummins Engine Company (Cummins); Onan Corporation (Onan), RVA Company; APA Engineered Solutions, Inc.; Kwikee Products Co., Inc.; Dometic Corporation; Freightliner Corp.; and Road Master Chassis (Road Master). The Pidcocks claim the following: (I) violation of the Motor Vehicle Service and Repair Act; (II) Violation of the Michigan Consumer Protection Act; (III) Breach of Warranty under the Magnuson-Moss Warranty Act and Breach of Express and Implied Warranties under the U.C.C.; (IV) Breach of Warranty of Good Faith and Fair Dealing; and (V) Revocation.

As will be explained, the only defendants now in the case are (1) Cummins and

Onan and (2) Road Master. Both defendants have filed motions for summary judgment. For the reasons that follow, the motions are GRANTED.

## II. Background[1]

### A. General

On June 8, 2002, the Pidcocks purchases a 2002 Holiday Rambler Ambassador Motor Home for a base price of $136,223,56. They financed a portion of the purchase price. With interest on the loan plus taxes, the total price was $249,196.80. Holiday Rambler manufactured the coach portion or "house" of the motor home. Holiday Rambler is a wholly owned subsidiary of Monaco. Road Master manufactured the chassis portion of the motor home and it is also a wholly owned subsidiary of Monaco. Holiday Rambler then sold the completed motor home to Ewing, an independent dealer. Ewing sold the home to the Pidcocks. Delivery occurred on or about June 15, 2002.

The motor home was repaired by various defendants throughout the Pidcock's ownership. In September 2003, the Pidcocks took the motor home in for repair. Repairs were completed by November 2003. Following these repairs, the Pidcocks drove the motor home from the repair facility to a storage facility and have not driven it since.

Apparently believing that the motor home is not longer drivable or functional, the Pidcocks filed a complaint against defendants making the claims noted above.

---

[1] Much of the background is taken from the Memorandum and Order Granting Monaco's Motion for Summary Judgment, Granting Road Master's Motion for Partial Summary Judgment, and Granting George Ewing's Motion for Summary Judgment, filed April 15, 2005.

B.  The Relevant Papers/Warranties

1.  Ewing - The Dealer

Richard Pidcock and Ewing entered into a purchase agreement for the motor home on June 15, 2002.  The purchase agreement contains the following provisions.  On the front page, in all capital letters, it states: NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON THE REVERSE SIDE.  The reverse side of the purchase agreement contained warranty language which will not be repeated here.

2.  Monaco a/k/a/ Holiday Rambler - Manufactured the House Portion

Holiday Rambler provided a limited warranty for twelve months or 24,000 miles and a sixth month/50,000 mile warranty for the steel or aluminum frame of the sidewalls (excluding side outs), roof, and rear and front walls.  The limited warranty disclaims (in all capital letters) any implied warranties of merchantability or fitness for a particular purpose.  The warranty covers "defects in the manufacture of your motor home and defects in materials used to manufacture your motor home."  It also contains the following limitation on legal action (in bold print and in all capital letters where indicated):

> **LEGAL REMEDIES:**
> **ANY ACTION TO ENFORCE THIS EXPRESS OR ANY IMPLIED WARRANTY SHALL NOT BE COMMENCED MORE THAN ONE (1) YEAR AFTER THE EXPIRATION OF THE WARRANTY**.  Some states do not allow the reduction in the statute of limitations, so the above may not apply to you.

Richard Pidcock signed an acknowledgment of the Holiday Rambler warranty.

3.  Road Master - Manufactured the Chassis

Road Master also provided a limited warranty for twenty-four months or 24,000 miles.  It covers "defects in the manufacture of the Roadmaster chassis (as defined

3

herein) and defects in materials used to manufacture the Roadmaster chassis." Road Master's obligation was limited to repair or replacement of any covered defect. Like the Holiday Rambler warranty, it disclaimed any implied warranties and contained a limitation provision on commencing a legal action more than one year after expiration of the warranty.

### 4.  Cummins - Manufactured the Engine

Cummins provided a warranty. The relevant provisions follow:

COVERAGE

> Base Engine Warranty
> The Base Engine Warranty covers any failure of the Engine which result, under normal use and service, from a defect in material or factory workmanship (Warrantable Failure). This coverage begins with the sale of th Engine by Cummins and continue s to five years or 100,000 miles (160,935 kilometers), whichever occurs first, from the date of deliver of the Engine to the first user.
> ...
> This warranty on Consumer Products is the United States is a LIMITED warranty. CUMMINS IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. Any implied warranties applicable to Consumer Products in the United States terminate concurrently with the expiration of the express warranties applicable to such products. ....
> Cummins Responsibilities
> During the Base Engine Warranty
> Cummins will pay for all parts and labor needed to repair the damage to the Engine resulting from a Warrantable Failure.
> ...
> Limitations
> Cummins is not responsible for failures or damage resulting from what Cummins determined to be abuse or neglect, including but not limited to: operation without adequate coolants or lubricants; overfueling, overspeeding; lack of maintenance of lubricating, cooling, or intake systems; improper storage, starting, warm-up, run-in or shutdown practices; unauthorized modification of the Engine. Cummins is also not responsible for failure caused by incorrect oil or fuel or by water, dirt or other contaminants in the fuel or oil.

### 5.  Onan - Manufactured the Generator in the motor home.

Onan provided the following warranty, in relevant part.

> THERE IS NO OTHER EXPRESS WARRANTY
> IN NO EVENT IS ONAN LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES
> IMPLIED WARRANTIES, INCLUDING MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO PERIODS OF WARRANTY SET FORTH BELOW.  TO THE EXTENT PERMITTED BY LAW, ANY AND ALL IMPLIED WARRANTIES ARE EXCLUDED.
> ...
> Onan warrants for the periods set forth below that such goods manufactures or supplied by it will be free from defect in workmanship and material, provided such goods are installed, operated, and maintained in accordance with Onan's written instructions.
> Onan's sole liability and Purchaser's sole remedy for a failure of goods under this warranty and for any and all other claims arising out of the purchase or use of the goods, including negligence on the part of the manufacturer, and damages to other genset components caused by the failure of a warranted part still under warranty, shall be limited to the repair or replacement, at Onan's option, of parts that do not conform to this warranty ...
> ...
> Goods designed for and used in a recreational vehicle are warranted for a period of three years or 2,000 hours, whichever occurs first, from date of delivery to the first retail purchaser.  Parts, labor, including diagnostic labor and removal and reinstallation are covered for the first two (2) years.  Part and labor on selected train and generator parts are covered in the third year or 2,000 hours. ...

### C.

As noted above, some of the defendants filed dispositive motions, as follows:

1. Dometic Corporation's Motion for Partial Summary Judgment, seeking dismissal of all claims except a claim of breach of express warranty
2. Monaco a/ka/ Holiday Rambler and Road Master's Motion for Partial Summary Judgment - seeking dismissal of all claims against Monaco Rambler and all claims except a claim of breach of express warranty against Road Master
3. Ewing's Motion for Summary Judgment - seeking dismissal of all claims against Ewing

The Court granted Monaco's motion for summary judgment, granted Road Master's motion for partial summary judgment, and granted Ewing's motion for

5

summary judgment.[2]  See Memorandum and Order filed April 15, 2005.  That left only the Pidcocks' claim for breach of express warranty against Road Master and its claims against Cummins and Onan.  Road Master, and Cummins and Onan's motions for summary judgment are now before the Court.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in

---

[2]The Pidcocks resolved their claims against Dometic before the Court coould rule on the motion.

6

summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV. Road Master's Motion

1.

Road Master says that the limited warranty is not an express warranty as defined by Michigan law, and therefore, the Pidcocks have no breach of warranty claim against it. Road Master also argues that there is no evidence that the warranty has been breached.[3]

---

[3]Road Master also says that the Pidcocks' expert, Robert Borden, is not qualified and therefore any of his statements/opinions the Pidcocks seek to rely on to defeat summary judgment cannot be considered. Road Master has also filed a separate motion to strike Mr. Borden on the grounds that his report does not comply with Fed. R. Civ. P. 26 and he is not qualified. The Pidcocks do not point to any statement or opinion by Mr. Borden in support of their position. As such, the Court need not address whether Mr. Borden is qualified as a expert. As discussed infra, even if the Court considers Mr. Borden's statements, the Pidcocks still fall short of their summary judgment burden.

7

The Pidcocks argue that there is evidence of a breach even though the motor home has been repaired their "shaken faith" in the motor home is sufficient to call into question the adequacy of the repairs. The Pidcocks also argue that the warranty is beyond mere repair or replacement.

2.

As an initial matter, the Court must consider the impact of the Court of Appeals' recent decision in Pack v. Damon Corp., 434 F.3d 810, 818-820 (6th Cir. 2006) in light of the arguments presented. In Pack, the Sixth Circuit held, inter alia, that a "repair or replacement" warranty is an express warranty under Michigan law. See M.C.L. § 440.2313(1).[4] Thus, Road Master's reliance on district court cases preceding Pack for the argument that its warranty is not an express warranty is misplaced.[5] Based on Pack, Road Master's warranty is an express warranty. The question, therefore, is

---

[4]This section provides:
(1) Express warranties by the seller are created as follows:
(a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
(c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

[5]The Court previously found that the warranty against Monaco was not an express warranty, relying on district court cases preceding Pack. See Pidcock v. Ewing, 371 F. Supp. 2d 870 (E.D. Mich. 2005). However, the issue with the Monaco warranty was whether the statute of limitations had expired. In any event, the Pidcocks have not moved for reconsideration in light of Pack.

8

whether the warranty has been breached.

3.

Under Michigan's version of the Uniform Commercial Code, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act." M.C.L. § 440.2719(2).  "A warranty fails for its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed, in which event the buyer is entitled to seek remedies under the standard UCC warranty provisions." Severn v. Sperry Corp., 212 Mich. App. 406 (1995) (citing Price Bros. Co. v. Charles J. Rogers Constr. Co., 104 Mich. App. 369 (1981)).

The fact that the motor home was previously serviced is not enough to establish a breach of Road Master's express warranty.  See Ducharme v. A&S RV Center, 321 F. Supp.2d 843, 850-51 (E.D. Mich. 2004) (similarly observing that (1) "the fact that the motor home was previously repaired does not establish a breach of an express warranty", (2)  some service on a complex product like a motor home is inevitable, and (3) there is no breach when the manufacturer is willing to repair an existing problem under the warranty), aff'd, No. 04-1224, 127 Fed. Appx. 204 (6th Cir. May 3, 2005). Moreover, the Pidcocks cannot establish a claim that Road Master's limited warranty's exclusive remedy of repair, replacement or adjustment failed of its essential purpose by lumping together all repairs and by aggregating the amount of time the motor home was out of service for any and all repairs.  See Computer Network, Inc. v. AM Gen. Corp., 696 N.W.2d 49, 55 (Mich. Ct. App. 2005)(observing that the plaintiff cannot rely on the aggregate number of repairs to argue that there is a question of fact whether the time

9

for repairs was unreasonable but rather must offer evidence as to each specific repair showing that the time for that repair was unreasonable under the circumstances).

4.

Richard Pidcocks testified at deposition that the motor home has the following problems: (1) the driver's side heat does not work; (2) the back up monitor does not work (3) the motor home is missing a labeling sticker. The Pidcock's expert identified the following problems: (1) rust; (2) electrical; (3) brakes; and (4) steering components.

Road Master carefully and in detail explained in its summary judgment papers that the Pidcocks cannot show that any of these complaints establish a breach of warranty, i.e. they cannot show that they are covered complaints or complaints that can be traceable to Road Master's warranty. Road Master in particular points to the fact that after the motor home was repaired in November 2003, Richard Pidcock signed the repair order which stated "I HAVE INSPECTED MY VEHICLE AND REPAIRS PERFORMED ARE SATISFACTORY." Road Master also notes that immediately after these repairs, the Pidcocks placed the motor home in storage and have not driven it since.

In response, the Pidcocks do not offer any evidence or argument as to whether these complaints establish a breach of warranty. Instead, they argue that their "shaken faith" in the motor home establishes a breach and justifies revocation. It appears that they contend that the real problem with the motor home is their fear as to what might go wrong with it in the future and this fear prevents them from using the motor home and establishes a breach of warranty. They also point to a statement on Road Master's website (www.roadmaasterchassis.com/service/index.html) that "in addition to safety,

10

performance and convenience, Road Master delivers piece of mind like no other chassis on the market today" as establishing an additional written warranty. They also say that they have established, "even if by circumstantial evidence," a genuine issue of material fact as to whether the Road Master warranty has been breached.

The Pidcock's response falls short. The Pidcocks do not question that their prior complaints with the motor home were repaired and instead rely on the theory that their "shaken faith" in the motor home and its ability to perform in the future is sufficient to show a breach of warranty. The Pidcocks cite Pifer v. Daimler Chrysler, No. 239638 (Mich. Ct. App. Dec. 2, 2003) (unpublished). In Pifer, the plaintiff sued defendant after leasing a truck which continued to overheat. The plaintiff claimed, inter alia, breach of warranty. On appeal, defendant argued that the jury was improperly instructed on plaintiff's revocation of acceptance claim because it contained only a subjective, i.e. shaken faith, component. The court of appeals disagreed, noting that the instruction complied with Michigan law which requires both a subjective and objective (factually correct) component.

The reliance on Pifer is misplaced. Pifer involved a challenge to a jury instruction regarding revocation of acceptance claim, not a breach of warranty claim. Even assuming that the Pidcocks can make a claim against Road Master for revocation of acceptance,[6] the Michigan Court of Appeals made clear that a plaintiff must have an objective basis for revocation – that is, they must also establish a real problem with the motor home which has substantially impaired its value. Subjective beliefs, which is all

---

[6] Michigan law does not provide for a revocation of acceptance claim against a remote manufacturer, such as Road Master. See Henderson v. Chrysler Corp., 191 Mich. App. 337, 341-43 (1991).

11

the Pidcocks have asserted, are not sufficient to show that a good is substantially impaired.

The Pidcock's argument as to statements on Road Master's website as establishing an additional warranty also fails. They provide no authority for the proposition that advertising statements on a web site constitute a warranty under state law or the MMWA.

The Pidcock's suggestion that circumstantial evidence is sufficient to create an issue of fact as to a breach of warranty is incorrect. They cite Caldwell v. Fox, 394 Mich. 401 (1975). Caldwell, however, is a products liability case where the jury was provided circumstantial evidence that a defective condition in a vehicle's brake systems was the cause of a collision. The issue in Caldwell was negligence, not a breach of warranty. Moreover, while the Pidcocks say they have circumstantial evidence, they fail to articulate such evidence.

Overall, the Pidcocks have not put forth evidence to create a genuine issue of material fact as to whether Road Master's warranty has been breached. The record shows that the motor home was repaired in 2003, was taken to a storage facility, and has not been driven ever since. As explained in Road Master's papers, there is no evidence to create a genuine issue of material fact as to whether Road Master's warranty has been breached as to any of the alleged problems with the motor home. Moreover, to the extent that the Pidcocks claim a breach of warranty under the MMWA, this claim fails as it is derivative of their state law breach of warranty claim.

V. Cummins and Onan's Motion

1.

Cummins and Onan say that all of the alleged problems with the motor home have been resolved and the Pidcocks in particular have no proof that the engine used excessive oil.  Cummins and Onan also discuss each and every claim made by the Pidcocks and argue that summary judgment is appropriate.

In response, the Pidcocks only address Count III - breach of warranty.  They argue that the record shows a genuine issue of material fact as to whether the engine and generator were properly repaired and/or function properly.

Because the Picocks did not address any of Cummins' and Onan's arguments as to Counts I, II, IV, and V of the complaint, they have failed to meet their summary judgment burden.  Accordingly, these claims are DISMISSED as to Cummins and Onan.

2.

The only issue as to this motion is whether the evidence establishes a breach of warranty as to the engine and generator.  The Pidcocks claim to have three problems with the Cummins engine:  (1) the engine light illuminating, (2) the engine not starting, and (3) engine using excessive oil.  The Pidcocks also claim that the generator does not work properly.

As to the engine light illuminating, Richard Pidcock's deposition testimony reveals that in January of 2003, the Pidocks were driving the motor home from Michigan to Florida.  During the trip, the check engine light came on.  Although the motor home was still drivable, the Pidcocks had it towed to a repair facility.  At the facility the "oil censor" was replaced.  Richard Pidcock stated that since that repair, the engine light has not

illuminated.  Based on this evidence, it cannot be said that the engine light illuminating constitutes a breach of warranty.

As to the engine not starting, Richard Pidcock testified at deposition that in response to the engine not starting on occasion, a repair facility replaced the starter. Since then, there have not been any "engine won't start" incidents.  This evidence fails to establish a breach of warranty.

As to the engine using excessive oil, Richard Pidcock testified that a repair facility inserted a new, longer dipstick.  Apparently, the problem was not engine oil consumption, but rather that an improper dipstick was being used.  Because, however, the motor home has not been driven since November 2003, the Pidcocks do not know whether there is a current problem with engine oil consumption.

This is the only problem with the engine the Pidcocks address in their response brief.  The Pidcocks seem to suggest that because Cummins did not take some action to confirm that the engine is not consuming excessive oil, they have established circumstantial evidence of a breach of warranty.  This argument lacks merit.  Cummins is not obligated to test the engine.  The Pidcocks have no evidence of any current engine oil consumption problem because they admit they have not driven the motor home since 2003.

The Pidcocks also appear to argue that by accepting the motor home for repair based on a complaint of engine oil consumption, Cummins has admitted to a breach. This argument also fails.  The record does not show any admission by Cummins and there is no authority for the proposition that by accepting the motor home for repair, Cummins admitted to a problem sufficient to establish a breach of warranty.

Overall, the Pidcocks have not meet their burden on summary judgment as to a claim against Cummins for breach of warranty.

The Pidcocks also allege that the generator works intermittently as evidenced by a failure to start on occasion. The Pidcocks say that this allegation is unrebutted and therefore Onan is not entitled to summary judgment. They are incorrect. The record shows that on September 9, 2003, when the motor home was in for repair, the facility inspected the generator and was able to start it ten times and therefore no repairs were made. The record also shows that on December 5, 2005, Richard Pidcock successfully started the engine but was not able to start the generator. This does not mean that the generator is defective. Significantly, the motor home had not been driven and had been outside at a storage facility since 2003 and Richard Pidcock did not boost the battery before attempting to start the generator. Moreover, on January 23, 2006, an expert for Road Master, James Krider, examined the generator and was able to start it after the battery powering the generator was boosted with booster cables.[7] It is highly likely that the need for a battery boost was not the result of a faulty generator but rather due to the fact the motor home has not been driven and has been outside in the elements since 2003, not due to a defective generator. Moreover, the Pidcocks' expert, Robert Borden, testified that he did not know whether the generator was currently functioning properly. In light of this record, the Pidcocks have failed to demonstrate a genuine issue of material fact as to whether Onan's warranty was breached.

In short, Cummins and Onan are entitled to summary judgment on the Pidcocks'

---

[7]Mr. Krider's report says that "the generator started at the inspection." The fact that it required the use of a battery boost is taken from a statement in Onan's summary judgment papers.

breach of warranty claim.

    SO ORDERED.


Dated:  May 25, 2006                          s/Avern Cohn
                                                     AVERN COHN
                                                     UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 25, 2006, by electronic and/or ordinary mail.

                                                     s/Julie Owens
                                                     Case Manager
                                                     (313) 234-5160